UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALLISON LABARBERA,

*Plaintiff,*

v.

NYU WINTHROP HOSPITAL,

*Defendant.*

CASE NO.: 2:18-CV-06737 (DRH) (SIL)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BAKER & HOSTETLER LLP

Amy J. Traub
Amanda L. Van Hoose Garofalo
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: agarofalo@bakerlaw.com

*Attorneys for Defendant NYU Winthrop Hospital*

**Table of Contents**

Page No.

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

SUMMARY OF PLAINTIFF'S CLAIMS .........................................................................3

LEGAL STANDARDS ...................................................................................................3

I.      Legal Standard Applicable to this Motion .........................................................3

II.     Legal Standards Applicable to Plaintiff's Claims .............................................4

        A.      Legal Standards Applicable to Plaintiff's Failure-to-Accommodate Claims ..........4

                1.      Standard Applicable to Federal Failure-to-Accommodate Claim ...............4

                2.      Standard Applicable to State Failure-to-Accommodate Claim ....................5

        B.      Legal Standard Applicable to Plaintiff's Federal and State Pregnancy Discrimination Claims ........................................................................6

        C.      Legal Standard Applicable to Plaintiff's Federal and State Disparate Impact Claims ...........................................................................................7

I.      Summary Judgment Is Warranted on Plaintiff's Failure-to-Accommodate Claims Because Her Federal Claim Is Precluded by *Young*, She Cannot Carry Her *Prima Facie* Burden or Prove Pretext, and Providing the Accommodation, if Even Required, Which It Was Not, Would Have Been an Undue Hardship. ...............................8

        A.      Plaintiff's Federal Failure-to-Accommodate Claim Fails as a Matter of Law Because it is Premised Upon a Theory Already Rejected by the United States Supreme Court in *Young*. ........................................................8

        B.      To the Extent Plaintiff's Federal Failure-to-Accommodate Claim Is Not Altogether Precluded by *Young*, Plaintiff Is Unable to Carry Her *Prima Facie* Burden on the Claim. ...............................................................9

        C.      Plaintiff Is Unable to Carry Her *Prima Facie* Burden on Her State Failure-to-Accommodate Claim .......................................................................12

        D.      Even If Plaintiff Could Carry Her Federal *Prima Facie* Burden, Defendant Can Articulate a Legitimate, Non-Discriminatory Reason for Denying Plaintiff's Exemption Request, and Plaintiff Cannot Prove Pretext .....................14

                1.      Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Denying Plaintiff's Exemption Request ...........................................14

2.    Plaintiff Cannot Prove Pretext Under Federal Law..................................15

E.    Even if Plaintiff Could Prove She Had a Pregnancy-Related Condition, Summary Judgment Would Still Be Warranted on Her State Law Failure-to-Accommodate Claim Because It Would Have Been an Undue Hardship to Have Provided an Accommodation, if One Was Even Required, Which It Was Not. ..............................................................................................................18

II.   Summary Judgment Is Warranted on Plaintiff's Disparate Treatment Claims Because She Cannot Carry Her *Prima Facie* Burden or Prove Pretext. ............................21

III.  Summary Judgment Is Warranted on Plaintiff's Disparate Impact Claims Because She Cannot Carry Her *Prima Facie* Burden. ........................................................22

CONCLUSION..............................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986)................................................................................................3,4

*Capruso v. Hartford Fin. Servs. Grp., Inc.,*
 No. 01 CIV.4250, 2003 WL 1872653 (S.D.N.Y. Apr. 10, 2003)............................. 7, 23

*Cardozo v. Healthfirst,*
 98 Civ. 3050, 1999 WL 782546 (2d Cir. Mar. 29, 1999)...................................15

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986)..............................................................................................3

*Chmura v. Monongalia Health Sys.,*
 No. 1:17CV222, 2019 WL 3767469 (N.D.W. Va. Aug. 9, 2019).................................11

*Colas v. City of Univ. of New York,*
 No. 17CV4825, 2019 WL 2028701 (E.D.N.Y. May 7, 2019)...............................8

*Colon v. Sabic Innovative Plastics US, LLC,*
 No. 115CV651, 2017 WL 3503681 (N.D.N.Y. Aug. 15, 2017)............................8

*Craddock v. Little Flower Children & Family Servs. of New York,*
 No. 12–CV-5062, 2016 WL 755631 (E.D.N.Y. Feb. 25, 2016) .....................................21

*Dimino v. New York City Transit Auth.,*
 64 F. Supp. 2d 136 (E.D.N.Y. 1999)..........................................................................7

*Graves v. Finch Pruyne & Co.,*
 457 F.3d 181 (2d Cir.2006) ....................................................................................21

*Graziano v. First Choice Med., PLLC,*
 No. 17-CV-1349, 2019 WL 4393668 (E.D.N.Y. Sept. 13, 2019)............................6

*Hussain v. Automotive Rentals, Inc.,*
 No. 14–CV-7476, 2015 WL 9581814 (E.D.N.Y. Dec. 30, 2015).................................16

*Jackson v. Battaglia,*
 63 F. Supp. 3d 214 (N.D.N.Y. 2014) .......................................................................6

*Kennebrew v. New York City Hous. Auth.,*
 No. 01 CIV 1654, 2002 WL 265120 (S.D.N.Y. Feb. 26, 2002)...........................3, 5, 15

*Krause v. Lancer & Loader Group, LLC*,
    965 N.Y.S.2d 312 (2013)................................................................................13

*LaSalle v. City of New York*,
    No. 13 CIV 5109, 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015)...................5

*Legg v. Ulster Cty.*,
    820 F.3d 67 (2d Cir. 2016).................................................................*passim*

*Lehmuller v. Inc. Vill. of Sag Harbor*,
    944 F. Supp. 1087 (E.D.N.Y. 1996)..............................................................7

*Lewis v. New York City Transit Auth.*,
    12 F. Supp. 3d 418 (E.D.N.Y. 2014)............................................................7

*Martinez v. New York State Div. of Human Rights*,
    1:13-CV-1252, 2015 WL 437399 (S.D.N.Y. Feb. 2, 2015)..........................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................3,4,

*McDonnell v. First Unum Life Ins. Co.*,
    No. 10 CV 8140, 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2013)..................16

*Muhleisen v. Wear Me Apparel LLC*,
    644 F. Supp. 2d 375 (S.D.N.Y. 2009).................................................7, 22

*Peralta v. Roros 940, Inc.*,
    72 F. Supp. 3d 385 (E.D.N.Y. 2014)..........................................................21

*Reilly v. Revlon, Inc.*,
    620 F. Supp. 2d 524 (S.D.N.Y. 2009)..........................................................4

*Roth v. 2810026 Canada Ltd.*,
    No. 13-CV-00901, 2017 WL 4310689 (W.D.N.Y. Sept. 28, 2017)...........16

*Rullan v. New York City Sanitation Dep't*,
    No. 13 CIV. 5154, 2014 WL 2011771 (S.D.N.Y. May 16, 2014) *aff'd*, 607 F.
    App'x 86 (2d Cir. 2015)..............................................................................13

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir.1998) ..........................................................................4

*Snyder v. Law*,
    2010 WL 5572768 (N.D.N.Y. Dec. 21, 2010)............................................16

*Velez v. Novartis Pharm. Corp.*,
    244 F.R.D. 243 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007)....................4, 9

*Westbrook v. City Univ. of N.Y.*,
  591 F. Supp. 2d 207 (E.D.N.Y. 2008) ............................................................4

*Woodman v. WWOR-TV, Inc.*,
  411 F.3d 69 (2d Cir. 2005) ...........................................................................4

*Young v. United Parcel Serv., Inc.*,
  575 U.S. 206 (2015) .............................................................................*passim*

**Statutes**

42 U.S.C. § 2000e(k) ..............................................................................................4

42 U.S.C.A. § 12113 ............................................................................................19

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e et seq ............................4

N.Y. Exec. Law § 296 ....................................................................................6, 13

N.Y. Exec. Law § 296(3)(a) ..................................................................................7

N.Y. Exec. Law § 296(3)(b) ..........................................................................19, 20

N.Y. Exec. Law § 296 (3)(c) ................................................................................7

**Other Authorities**

10 N.Y.C.R.R. 2.59(d) ...........................................................................................1

Fed. R. Civ. P. 56(e) .............................................................................................4

Federal Rule of Evidence 201(b)(2) ...............................................................16, 17

Defendant NYU Winthrop Hospital ("Defendant") respectfully submits this memorandum of law in support of its Motion for Summary Judgment and requests that all of the claims asserted by Plaintiff Allison LaBarbera ("Plaintiff") be dismissed in their entirety.

## PRELIMINARY STATEMENT

Defendant is a cutting-edge hospital that places the utmost importance on the health and safety of its patients, which include uniquely vulnerable and immunocompromised patients, such as pregnant individuals, infants, children, and the elderly. In order to ensure that Defendant maintains its reputation for being a leader in healthcare and holding itself to a higher standard than other medical institutions, and to further demonstrate its commitment to patient care and safety, it enacted the Mandatory Influenza Vaccination Program Policy ("Policy"), requiring all employees to be immunized against influenza (the "flu") unless they have an approved medical or religious exemption. The Policy is consistent with 10 N.Y.C.R.R. 2.59(d) and (h) and was developed based on the well-recognized medical consensus that the flu is contagious, transmitted at a higher rate among hospital personnel, and can be fatal (especially for immunocompromised patients), and that vaccination is the single best method to prevent the spread of the flu.

Plaintiff, a former Vascular Technologist in Defendant's Radiology Department who regularly interacted with Defendant's patients and employees, took exception to the Policy and refused to comply because she was pregnant. As it did with all noncompliant employees, Defendant terminated her employment. She now brings suit, attempting to exploit laws enacted to protect pregnant women from being discriminated against in the workplace. But she is not protected by these laws because, *inter alia*, her allegations and testimony, and the testimony of her midwife, Jeanette Breen ("Breen"), make clear that her request to be exempted from the Policy was based upon her own personal unfounded beliefs about the safety of the flu vaccine, rather

than on any temporary disability related to her pregnancy or pregnancy-related condition, which are the only circumstances that would qualify her for protection under federal and state law.

Curiously, Plaintiff claims that had the Policy been enacted before she became pregnant, she would not have become pregnant during the flu season. But the facts plainly make clear that Plaintiff became pregnant after the Policy was announced. Likewise, the facts reveal that Plaintiff made up her mind about not receiving the flu shot before she was pregnant and before she even met with any of her healthcare professionals concerning her pregnancy. Importantly, Plaintiff admits that none of her healthcare professionals specifically advised her not to receive the flu vaccine and further admits that she had no temporary disability related to her pregnancy or any pregnancy-related condition. Plaintiff also does not dispute that all employees were required to comply with the Policy, and she admits that she has no idea how other employees' exemption requests were treated. She likewise has no evidence to indicate that Defendant treated pregnant employees differently, held any animus whatsoever against pregnant employees, or that the Policy disparately impacted pregnant employees.

Because Plaintiff does not qualify for protection under federal or state law, cannot carry her *prima facie* burden on any of her claims, and cannot prove pretext, and because it would have been an undue hardship for Defendant to accommodate her, if accommodation was even required or warranted (which it was not), all of Plaintiff's claims should be dismissed, and summary judgment should be granted in favor of Defendant.

## **STATEMENT OF FACTS**

Defendant relies upon the facts set forth in its Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF") and incorporates those facts here.

## SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff asserts claims for failure to accommodate, disparate treatment, and disparate impact, each pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (the "PDA"), and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296.  (*See* Compl.) All of her claims are premised on the undisputed facts that she was pregnant, she submitted a request for a medical exemption to the Policy on the basis of her pregnancy, her exemption was denied because she did not present with a medical contraindication to the flu vaccine, and because she did not comply with the Policy, her employment was terminated.

## LEGAL STANDARDS

### I.    Legal Standard Applicable to this Motion

"[S]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Kennebrew v. New York City Hous. Auth.*, No. 01 CIV 1654, 2002 WL 265120, at *6–7 (S.D.N.Y. Feb. 26, 2002) (citing to Fed.R.Civ.P. 56(c); *see also*, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991)). The movant may meet its burden by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See id.*; *see also Celotex* 477 U.S. at 323.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must "set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 534 (S.D.N.Y. 2009) (citing *Matsushita.*, 475 U.S. at 587). However, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Westbrook v. City Univ. of N.Y.*, 591 F. Supp. 2d 207, 222 (E.D.N.Y. 2008).

Importantly, "the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

## II. Legal Standards Applicable to Plaintiff's Claims

### A. Legal Standards Applicable to Plaintiff's Failure-to-Accommodate Claims

#### 1. Standard Applicable to Federal Failure-to-Accommodate Claim

The PDA "provides that Title VII's prohibition against gender discrimination includes discrimination on the basis of pregnancy." *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 263 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007). The accommodation clause in the PDA was enacted to ensure that pregnant employees had the ability to receive an accommodation for the ***temporary disabilities that were a result of pregnancy that rendered them in some way unable to work***. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 224–7 (2015); *see also Legg v. Ulster Cty.*, 820 F.3d 67, 72 (2d Cir. 2016) (citing *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462

U.S. 669, 670–71 & n. 1 (1983) ("This provision "makes clear that it is discriminatory to treat **pregnancy-related conditions** less favorably than other medical conditions.") (emphasis added).

To prove a *prima facie* case of failure to accommodate pursuant to the PDA, it's Plaintiff's burden to establish that: (1) she belonged to the protected class; (2) she sought accommodation; (3) Defendant did not accommodate her; and (4) Defendant accommodated others that were "similarly situated in their ability or inability to work." *Young*, 575 U.S. 206 at 229; *see also LaSalle v. City of New York*, No. 13 CIV. 5109, 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015). If Plaintiff were able to prove her *prima facie* case, which she is not, the burden would shift to Defendant to present a legitimate, non-discriminatory reason for its decision, which Defendant can do here. *See id.* Plaintiff would then have the opportunity to prove pretext by providing "evidence that [Defendant]'s policies impose a significant burden on pregnant workers, and that [its] 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather . . . give rise to an inference of intentional discrimination." *Young*, 575 U.S. at 229. To survive summary judgment, '[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of **intentional** discrimination." *Kennebrew*, 2002 WL 265120, at *14 (citing *Weinstock*, 224 F.3d at 42) (emphasis added).

### 2.    Standard Applicable to State Failure-to-Accommodate Claim

The NYSHRL provides that it is an unlawful discriminatory practice for an employer to refuse to provide reasonable accommodations for employees with known disabilities or "pregnancy-related conditions." N.Y. EXEC. LAW § 296. Notably, **the NYSHRL does not impose a requirement to provide an accommodation for pregnancy in and of itself.** Indeed, it does not even mention pregnancy, but instead, "**pregnancy-related conditions**," which are defined as "medical condition[s] related to pregnancy or childbirth that inhibit[] the exercise of

a normal bodily function or [are] demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Id.* § 292.

In order to prove a claim for failure to accommodate pregnancy under the NYSHRL, Plaintiff must prove that: (1) she had a "pregnancy-related condition"; (2) Defendant had notice of her "pregnancy-related condition"; (3) she was able to perform the essential functions of her job with a reasonable accommodation; and (4) Defendant refused to make such an accommodation. *See Jackson v. Battaglia*, 63 F. Supp. 3d 214, 224–25 (N.D.N.Y. 2014) (citing *Vinokur v. Sovereign Bank*, 701 F.Supp.2d 276, 293 (E.D.N.Y.2010)); N.Y. Exec. Law § 296(3)(a).

Importantly, it is Plaintiff's burden to provide sufficient medical or other information necessary to verify the existence of a "pregnancy-related condition." N.Y. Exec. Law § 296 (3)(c).

## B.   Legal Standard Applicable to Plaintiff's Federal and State Pregnancy Discrimination Claims

In order to prove pregnancy discrimination under either federal or New York state law, Plaintiff must prove that she: (1) was a member of a protected class (2) who was qualified for her position; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination.  *See Graziano v. First Choice Med., PLLC*, No. 17-CV-1349, 2019 WL 4393668, at *5 (E.D.N.Y. Sept. 13, 2019) ("disparate treatment claims brought under Title VII ... and the NYSHRL are [ ] analyzed under the same standard."). If Plaintiff were able to carry her *prima facie* burden, which she cannot, the burden would shift to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, which it can do here. The burden would then shift back to Plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude that it is more likely than not that Defendant's actions were motivated, at least in part, by a discriminatory reason.  *See id.*

Notably, it is not sufficient "for a plaintiff to show merely that she satisfies *McDonnell Douglas's* minimal requirements of a *prima facie* case and to put forward evidence from which a

factfinder could find that the employer's explanation . . . was false." *Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 383 (S.D.N.Y. 2009). Instead, in order to defeat summary judgment, the Court must find that there is "sufficient evidence in the record from which a reasonable trier of fact could find in favor of [P]laintiff on the ultimate issue − that is, the record contains sufficient evidence to support an inference of discrimination." *Id.*

### C.    Legal Standard Applicable to Plaintiff's Federal and State Disparate Impact Claims

In order to prove disparate impact under both federal and state law, Plaintiff must prove that Defendant's facially neutral Policy disproportionately had a negative effect on pregnant women. *See Dimino v. New York City Transit Auth.*, 64 F. Supp. 2d 136, 157 (E.D.N.Y. 1999). To do so, Plaintiff must show that: (1) Defendant engaged in a specific employment practice that had an adverse impact on pregnant employees; and (2) there is a causal link between the challenged employment practice and the adverse impact." *Lehmuller v. Inc. Vill. of Sag Harbor*, 944 F. Supp. 1087, 1092 (E.D.N.Y. 1996)

"The basis for a successful disparate impact claim involves a comparison between two groups − those affected and those unaffected by the facially neutral policy." *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 446 (E.D.N.Y. 2014). Generally, disparate impact claims require "substantial statistical support." *Dimino*, 64 F. Supp. 2d at 157 (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986−87 (1988); *Capruso v. Hartford Fin. Servs. Grp., Inc.*, No. 01 CIV.4250, 2003 WL 1872653, at *6 (S.D.N.Y. Apr. 10, 2003) ("must present statistical evidence of a kind and degree sufficient to show that the practice in question has caused [disparate impact]."). "Furthermore, the Supreme Court has noted that a small statistical sample or incomplete data sets would be standard weaknesses in the support of such a claim." *Id.*

If Plaintiff can establish her *prima facie* case, which she cannot, Defendant then must establish "that the challenged practice or policy is "job related for the position in question and

consistent with business necessity." *Legg*, 2017 WL 3207754, at *5. The burden then shifts back to Plaintiff to prove "the availability of an alternative policy or practice that would also satisfy the asserted business necessity but would do so without producing the disparate effect." *Id.*

## **ARGUMENT**

**I.     Summary Judgment Is Warranted on Plaintiff's Failure-to-Accommodate Claims Because Her Federal Claim Is Precluded by *Young*, She Cannot Carry Her *Prima Facie* Burden or Prove Pretext, and Providing the Accommodation, if Even Required, Which It Was Not, Would Have Been an Undue Hardship.**

**A.     Plaintiff's Federal Failure-to-Accommodate Claim Fails as a Matter of Law Because it is Premised Upon a Theory Already Rejected by the United States Supreme Court in *Young*.**

Plaintiff essentially argues that she was entitled to be exempted from the Policy merely because she was pregnant (SUMF ¶¶ 134,-36, 139-41, 154-57), but the simple fact of her pregnancy is not enough to warrant accommodation under the PDA. *See Colas v. City of Univ. of New York*, No. 17CV4825, 2019 WL 2028701, at *3 (E.D.N.Y. May 7, 2019) ("pregnancy alone is not considered a disability"); *Martinez v. New York State Div. of Human Rights*, 1:13-CV-1252, 2015 WL 437399, at *11 (S.D.N.Y. Feb. 2, 2015) (pregnancy is not disability absent evidence that it "resulted in any unusual conditions that substantially limited her life activities."); *see also Colon v. Sabic Innovative Plastics US, LLC*, No. 115CV651, 2017 WL 3503681, at *7 (N.D.N.Y. Aug. 15, 2017). Instead, she needed to have provided evidence of a temporary disability related to her pregnancy or a pregnancy-related condition that in some way rendered her unable to work to warrant accommodation.   As set forth in Section I(C) *infra*, she did not do this.

Indeed, Plaintiff's theory in this case – that the simple fact of her pregnancy entitled her to accommodation – is a theory that has already been rejected by the United States Supreme Court in *Young*:

> Young contends that the [law] means that whenever 'an employer accommodates only a subset of workers with disabling conditions,' a court should find a Title VII violation if 'pregnant workers who are similar in the ability to work' do not

'receive the same [accommodation] even if still other non-pregnant workers do not receive accommodations.'

575 U.S. 206 at 220. The Supreme Court held that such an interpretation of the law would provide pregnant employees "a most-favored-nation status," and further noted that the PDA "does not say that the employer must treat pregnant employees the "same" as "*any* other persons." *Id.* at 222; *see also Legg*, 820 F.3d at 77. The *Young* Court further clarified that nothing in the PDA differs from the longstanding notion that employers are permitted to "implement policies that are not intended to harm members of a protected class, even if their implementation sometimes harms those members, as long as the employer has a legitimate, nondiscriminatory, non-pretextual reason for doing so." *Id.*  Applying these principles to the instance case, just because some non-pregnant employees were provided a medical exemption does not mean that all pregnant employees were also required to have been provided a medical exemption. Instead:

> [i]t has been repeatedly affirmed that the PDA does not require the creation of special programs for pregnant women; nor does it mandate any special treatment. To the contrary, the statute specifically requires that pregnant women be treated the same as all other employees with similar disabilities.

*Velez*, 244 F.R.D. at 264.

Plaintiff argues that her state of being pregnant, in and of itself, required her to be accommodated with an exemption under the PDA because some of Defendant's employees received a medical exemption (*See* SUMF ¶ 135, Compl. ¶¶ 15, 32, 36), but as *Young* makes clear, this is not what the PDA requires, and as such, her federal failure-to-accommodate claim should be denied as a matter of law.

**B.    To the Extent Plaintiff's Federal Failure-to-Accommodate Claim Is Not Altogether Precluded by *Young*, Plaintiff Is Unable to Carry Her *Prima Facie* Burden on the Claim.**

Even if not precluded by *Young*, Plaintiff falls short on the fourth element of her *prima facie* failure-to-accommodate burden. Specifically, she cannot prove that Defendant

accommodated others that were "similarly situated in their ability or inability to work." Indeed, she admitted as much in her deposition when she testified that she has not spoken to other employees – pregnant or not – regarding their flu vaccine exemption requests, and the evidence otherwise produced in the case does not support her contention. (SUMF ¶¶ 187-194.) The facts are that all employees – pregnant and non-pregnant – were subject to the Policy, and their medical exemptions were evaluated in the same manner as Plaintiff's. (*Id.* at ¶¶ 18, 37-42, 44-50, 53, 187-193.)

To wit, Defendant's Influenza Vaccine Exemption Review Board ("IVERB") reviewed and determined each medical exemption request to the flu vaccine. (*Id.* at ¶¶ 21, 41.) The IVERB was an interdisciplinary team of hospital representatives from the Employee Health Department ("EHD"), doctors from various medical specialties, Infection Prevention, a Pastoral Care representative, representatives from the Nursing Department, Employee Relations personnel, senior level human resources personnel, and members of the executive team. (*Id.* at ¶ 22.) The IVERB's review was conducted anonymously, meaning that when the IVERB reviewed an exemption request, the IVERB members were not aware who submitted the request. (*Id.* at ¶¶ 44, 53, 191.) The IVERB accepted the medical exemption request ***only if the employee demonstrated that he/she had a medical contraindication to the flu vaccine policy***, which included a (1) previous serious reaction or anaphylactic reaction to the flu vaccine or one of its components; (2) documented history of Guillain-Barre syndrome occurring within six weeks of receiving the flu vaccine; or (3) medical condition that prevented the employee from receiving the flu vaccine, the nature, duration and severity of which were documented by a medical

provider.[1] (*Id.* at ¶ 42.) Employees who failed to comply with the policy, either by receiving the flu shot or being approved for an exemption, were terminated. (*Id.* at ¶ 187.)

In the case of Plaintiff, she did not present with an inability to work (*id.* at ¶ 157), and she was not treated any differently than non-pregnant employees who, like her, were similarly able to work. (*Id.* at ¶¶ 18, 37-42, 44-50, 53, 187-193.) Indeed, other non-pregnant employees who were able to work were also denied a medical exemption if they, like Plaintiff, failed to present evidence of a medical contraindication to the vaccine. (*Id.* at ¶ 189.) And all employees, pregnant and non-pregnant, were given the opportunity to be accommodated under the same standard – namely, if an employee presented with a medical contraindication to the vaccine, that employee qualified for an exemption and was excused from receiving the flu shot. (*Id.* at ¶¶ 18, 37-42, 44-50, 53, 187-193.)

Plaintiff simply did not present with a medical contraindication to the flu vaccine. (*Id.* at ¶¶ 42, 51, 55-61, 64-66, 69-72, 75-76, 79, 84, 86, 133-36, 139-42, 144, 146-47, 152-57, 169-73, 183-86.) As a result, her exemption request was denied. (*Id.* at ¶ 148.) *See Chmura v. Monongalia Health Sys.*, No. 1:17CV222, 2019 WL 3767469, at *8 (N.D.W. Va. Aug. 9, 2019) (granting defendant summary judgment finding no discrimination where hospital denied employee flu vaccine exemption where no evidence of medical contraindication provided and finding doctor's conclusory statements on exemption form insufficient to show contraindication). As the evidence indicates, many other non-pregnant employees also failed to present with medical contraindications to the flu vaccine, and they too had their medical exemption requests denied. (SUMF ¶ 189.)

---

[1] Importantly, Defendant based its definition of "medical contraindication" on the guidance and recommendations of the Centers for Disease Control and Prevention ("CDC"). (SUMF ¶ 43.)

11

By her own admission, Plaintiff cannot meet her burden to present evidence showing that non-pregnant employees without a medical contraindication to the flu vaccine were accommodated but that pregnant employees without a medical contraindication to the flu vaccine were not. (*Id.* at ¶ 194.) Accordingly, summary judgment is warranted on her federal failure-to-accommodate claim for this second reason.

### C.  Plaintiff Is Unable to Carry Her *Prima Facie* Burden on Her State Failure-to Accommodate Claim.

Similarly, and fatal to her state failure-to-accommodate claim is the indisputable fact that Plaintiff did not have a "pregnancy-related condition" when she requested to be exempted from the mandatory flu vaccine policy, or at any time during her pregnancy, for that matter.  (SUMF ¶¶ 86, 131-145, 152-157, 169-173, 182-86.) Indeed, Plaintiff does not even assert, nor could she, that she had a "pregnancy-related condition" or any temporary disability that was the result of her pregnancy. (*Id.*) As set forth above, and just like the PDA, **the NYSHRL does not impose a requirement to provide an accommodation for pregnancy in and of itself.** *See* N.Y. Exec. Law § 296. Instead, one must have a "***pregnancy-related condition***" to be protected under the statute, and Plaintiff undisputedly did not. (*Id.*) To the complete contrary, Plaintiff had a fairly routine pregnancy without any complications, and the only reason for her request for an exemption from the Policy was her pregnancy, in and of itself – a fact both she and her midwife admit.  (SUMF ¶¶ 102, 134-136, 139-44, 152, 154–57.)

Although Plaintiff first declined the flu shot on September 14, 2017, **before she was even pregnant** (indicating that her desire to forego the flu shot was a personal choice, not a medical contraindication) (*id.* at ¶¶ 100, 112, 124–126), she ultimately became pregnant and submitted a request for an exemption from the Policy based solely and only upon the fact of her pregnancy. (*Id.* at ¶¶ 100-01, 134-136, 139-44, 152, 154–57.) On November 14, 2017, the same day Plaintiff had her first appointment with Breen, Breen submitted a Request for Exemption Form to EHD

12

on behalf of Plaintiff (the "Exemption Request"). (*Id.* at ¶¶ 106, 138.) When asked for the medical reason for which the Exemption Request was being submitted, Plaintiff indicated "Pregnant." (*Id.* at ¶¶ 135, 139.) Breen filled out Attachment A to the Exemption Request, and checked "Other" under precaution, and when asked to describe the reaction and date, she stated, "There is no evidence proving the safety of the influenza vaccine for the pregnant woman or her fetus." (*Id.* at ¶ 140.) As made clear by her Exemption Request, in her deposition testimony, and in the deposition testimony of her midwife, the reason for Plaintiff's request was simply "pregnant." (*Id.* at ¶¶ 134–136, 139–44, 152, 154–57.)

Although Plaintiff contends Defendant failed to accommodate her, pregnancy in and of itself does not even trigger an employer's obligation to engage in the interactive process to determine if a reasonable accommodation exists under the NYSHRL. *See Krause v. Lancer & Loader Group, LLC*, 965 N.Y.S.2d 312 (2013) ( "plaintiff has failed to allege . . . that her pregnancy *impaired* her in exercising a normal bodily function, or that she had any complications in connection with her pregnancy, which prevented her from normal life activity" and "this court has found no cases in this or other departments, nor does plaintiff cite any, holding that a (normal) pregnancy qualifies as a disability within the meaning of the State . . . Human Rights Law"); *Rullan v. New York City Sanitation Dep't*, No. 13 CIV. 5154, 2014 WL 2011771, at *8 (S.D.N.Y. May 16, 2014) (dismissing failure-to-accommodate claim because plaintiff failed to make factual showing of required elements) *aff'd*, 607 F. App'x 86 (2d Cir. 2015).

Nevertheless, there can be no claim that Defendant did not engage in the interactive process with Plaintiff because it did, even though not legally required to do so. (SUMF ¶¶ 130–157.) In fact, after receiving her Exemption Request, Defendant gave Plaintiff another chance to articulate a "pregnancy-related condition" when Marlene Davis ("Davis"), a Physician Assistant in EHD and a member of the IVERB, reached out to both Plaintiff and Breen. (*Id.*) Plaintiff and

Breen both testified that they had follow-up conversations with Defendant prior to the Exemption Request being denied, and neither asked Davis any questions about what could constitute a proper basis for a medical exemption. (*Id.*) Instead, they each maintained and confirmed that the simple fact of Plaintiff's pregnancy was the sole and only basis for the request, not any "pregnancy-related condition," as that term is defined by the NYSHRL. (*Id.*) No further information was provided to Defendant by either Plaintiff or Breen in support of Plaintiff's Exemption Request. (*Id.* at ¶¶ 154–157.)

Not only does Plaintiff admit that she had no other reason for requesting an exemption to the Policy outside of the simple fact of her pregnancy, but she also admits that ***none of the healthcare providers with whom she consulted during her pregnancy specifically advised her not to receive the flu vaccine***. (*Id.* at ¶¶ 135, 169, 183, 185.) Indeed, Plaintiff's Exemption Request did not list a medically-advised restriction or need related to her pregnancy and contained nothing more than a conclusory (and also false) statement about the safety of flu vaccines. (*Id.* at ¶¶ 86, 131-145, 152-157, 169-173, 182-86) Consistent with Plaintiff's testimony, Breen also testified that the decision to not receive the flu vaccine was totally Plaintiff's – a decision that Plaintiff had made ***before even meeting Breen or consulting with her or another medical professional***. (*Id.* at ¶¶ 160, 163, 171-173.)

Because Plaintiff has failed to prove, or even allege, that she had a "pregnancy-related condition," she was not entitled to any accommodation under the NYSHRL, and as such, her state failure-to-accommodate claim should be dismissed.

**D.   Even If Plaintiff Could Carry Her Federal *Prima Facie* Burden, Defendant Can Articulate a Legitimate, Non-Discriminatory Reason for Denying Plaintiff's Exemption Request, and Plaintiff Cannot Prove Pretext.**

    ***1.   Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Denying Plaintiff's Exemption Request.***

Even if Plaintiff were able to carry her *prima facie* burden under the PDA, which she clearly cannot, she is unable to rebut Defendant's legitimate, non-discriminatory reason for denying her Exemption Request – namely, that she did not meet the requirements for a medical exemption to the Policy because she did not have a medical contraindication to the flu vaccine.

As set forth above, pregnancy is not a medical contraindication to the flu vaccine, as defined in the Policy and as fully supported by the medical community, the CDC, and the vaccine package inserts. (SUMF ¶¶ 51, 55-61, 64, 70-72, 76, 79, 86; *see also* Section I(D)(2) *infra*.) Plaintiff's Exemption Request did not cite to any medical reason for why she could not receive the flu vaccine. (SUMF ¶¶ 86, 131-145, 152-157, 169-173, 182-86)  It did not state that she had had a prior bad reaction to the flu, that she was unable to or had been advised against receiving the vaccine, or that she had been specifically advised not to receive the flu vaccine while pregnant. (*Id*.) Instead, the Exemption Request contained only a conclusory (and false) statement that there was no evidence of the safety of the flu vaccine for the pregnant woman or her fetus (*id*.), and when given the opportunity to explain further, Plaintiff and Breen confirmed that the mere fact of Plaintiff's pregnancy was the only reason for the medical exemption request. (*Id*. at ¶¶ 130-153.)

Defendant denied Plaintiff's Exemption Request because she failed to articulate a medical contraindication to the flu vaccine.  This is a legitimate, nondiscriminatory reason that cannot be rebutted.

### 2.    *Plaintiff Cannot Prove Pretext Under Federal Law.*

Plaintiff also cannot prove pretext because she has no "evidence that [the Policy] impose[d] a significant burden on pregnant workers, and that [Defendant's] 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather . . . give rise to an inference of intentional discrimination." *Young*, 575 U.S. at 229.  Instead, she offers

only conclusory statements that pregnant employees are: (i) "the only employees required to inject their unborn children;" and (ii) required to "use the medication despite the lack of adequate and well controlled testing to establish its safety." (Compl. ¶¶ 32, 35.) *Kennebrew*, 2002 WL 265120 at *15 (citing to *Cardozo v. Healthfirst*, 98 Civ. 3050, 1999 WL 782546 at * 8 (2d Cir. Mar. 29, 1999) ("Conclusory allegations made by the Plaintiff of (alleged) discriminatory conduct are insufficient to avoid summary judgment.").

As discussed above, the medical community at large and the CDC specifically contradict Plaintiff's conclusory statements.[2] (SUMF ¶¶ 51, 55-61, 64, 70-72, 76, 79, 86.) The CDC not only states that the flu vaccine is safe for pregnant women during any trimester, but it specifically recommends that pregnant women receive the vaccine.[3] (*Id.* at ¶ 56.) Plaintiff offers absolutely no evidence as to why pregnancy is a contraindication to the flu vaccine, why the CDC guidance is inaccurate or should not be trusted (to the contrary, both she and Breen admit to referring to and trusting the CDC for advice), or any documented safety concerns for pregnant individuals.[4]

---

[2] Statements by the CDC can be judicially noticed by the Court and are admissible as evidence under Federal Rule of Evidence 201(b)(2). *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 8140, 2013 WL 3975941, at *16 (S.D.N.Y. Aug. 5, 2013) (judicial notice of background information on Lyme Disease, its diagnosis, and treatment from CDC's website); *Roth v. 2810026 Canada Ltd.*, No. 13-CV-00901, 2017 WL 4310689, at *22 (W.D.N.Y. Sept. 28, 2017) ("the court may take judicial notice of well-established medical assumptions"); *Hussain v. Automotive Rentals, Inc.*, No. 14-CV-7476, 2015 WL 9581814, at *7-8, nn. 19 and 24 (E.D.N.Y. Dec. 30, 2015) (noting facts from CDC); *see also Snyder v. Law*, 2010 WL 5572768, at *1 n. 1 (N.D.N.Y. Dec. 21, 2010) (judicial notice of mental health disorder definition from medical dictionary)); *see also* FED. R. EVID. 201(b)(2) (court may take judicial notice of, *inter alia*, "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources who accuracy cannot reasonably be questioned.").

[3] According to the CDC, the only flu vaccine that is contraindicated for pregnant individuals is the Live Attenuated Vaccine, which was not a vaccine offered by Defendant as part of its flu vaccine program. (SUMF ¶¶57-58.)

[4] Plaintiff's vague statement that she saw something on the CDC's website regarding the H1N1 virus and it causing spontaneous abortions when she was researching the flu vaccine (SUMF ¶ 115) fails to create an issue of material fact for several reasons: (1) the H1N1 vaccine is a monovalent vaccine, which is not the same vaccine as the flu vaccines at issue here (*id.* at ¶¶ 25, 70); (2) she testified that whatever she read stated that the H1N1 virus itself (rather than any

16

(*Id.* at ¶¶110, 115-119, 178-180.) Instead Plaintiff and Breen both admit that they have no education related to the flu vaccine and its safety in pregnant individuals, and Plaintiff vaguely testified that she conducted research but was unable to recall the sources of her research and admitted that she did not check the authors of those sources. (*Id.* at ¶¶113-114, 174-75.) Furthermore, the CDC's recommendations are well-respected, widely used, including by several other reputable sources, including the American College of Obstetricians and Gynecologists and the American Academy of Pediatrics, which again, Plaintiff and Breen both admit to consulting and following recommendations therefrom.[5] (*Id.* at ¶¶59-61, 120-21, 176-77.)

Breen also admits that she did not do any research on the flu vaccine other than reviewing the package insert prior to filling out the Exemption Request (*id.* at ¶¶ 165-167), but the vaccine inserts flatly contradict Plaintiff's position and her Exemption Request. (*Id.* at 86.) Specifically, the drug labels for each of the vaccines offered during the relevant year (Fluzone Quadrivalent, Flucelavax Quadrivalent, Fluarix Quadrivalent, and FluBlok) specifically list medical contraindications, warnings, precautions, and adverse reactions, but ***pregnancy is not listed under any of those categories***.[6] (*Id.*) Lastly, the FDA rated the flu vaccines as Pregnancy Category B drugs, which are drugs that "***have failed to demonstrate a risk to the fetus.***" (*Id.* at ¶¶75-79.) And Breen herself confirmed that it was Plaintiff's decision not to take the flu

---

vaccine) caused such spontaneous abortions (*id.* at ¶ 115); and (3) she was unable to identify where she allegedly read this information, when it was published, or whether it was even applicable to the 2017-18 flu season. (*Id.*) In any event, the one study indicating that spontaneous abortion may occur in very specific circumstances where the H1N1 vaccine is administered has since been retracted by the authors of that study. (*Id.* at ¶¶ 70-72.)

[5] Statements by the AAP and ACOG can also be judicially noticed by the Court and are admissible as evidence under Federal Rule of Evidence 201(b)(2). *See* FED. R. EVID. 201(b)(2).

[6] Furthermore, although Plaintiff and Breen both claim to have relied upon the package inserts for their conclusory claims regarding the safety of the flu vaccine, neither could articulate which vaccine's package insert they reviewed before completing the Exemption Request, nor were they able to identify which flu vaccines were offered by Defendant during the 2017-18 flu season. (SUMF ¶ 110, 113,122, 166-167.)

vaccine and that Plaintiff had made that decision prior to discussing it with Breen's office, rather than the vaccine being a true medical contraindication. (*Id.* at ¶¶ 160-164; 169-173.)

Finally, Plaintiff offers absolutely no evidence that the Policy was enacted with a purpose to discriminate against pregnant workers or that anyone at Defendant had any animus against pregnant individuals. Indeed, she has provided no evidence that Defendant accommodated a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers. *Young*, 575 U.S. at 229–30. The evidence reflects that Defendant granted medical exemptions only to a very small number of individuals, which means that it denied medical exemption requests for several non-pregnant employees, all of whom, like Plaintiff, failed to present evidence of a medical contraindication. (SUMF ¶¶ 192, 189.) Defendant also granted a medical exemption to a pregnant employee who was able to articulate a medical contraindication to the flu vaccine. (*Id.* at ¶ 190.) Notably, because the exemption request process was blind at the time the decision-making took place, Defendant was unable to know whether someone requesting an exemption was pregnant unless that employee specifically stated that she was pregnant in her exemption request; therefore, it is possible that Defendant actually granted many more pregnant employees' exemption requests. (*Id.* at ¶ 191.) Both of these facts bely the argument that the Policy imposed a significant burden on pregnant employees.

The fact remains that Plaintiff simply cannot carry her burden of proving pretext, and for this third reason, summary judgment should be granted on her federal failure-to-accommodate claim.

      **E.**    **Even if Plaintiff Could Prove She Had a Pregnancy-Related Condition, Summary Judgment Would Still Be Warranted on Her State Law Failure-to-Accommodate Claim Because It Would Have Been an Undue Hardship to Have Provided an Accommodation, if One Was Even Required, Which It Was Not.**

Employers are not required to provide an accommodation if it would constitute an undue hardship. N.Y. EXEC. LAW § 296(3)(b). In determining whether an undue hardship exists, courts examine several factors, including:

(i) The overall size of the business, program or enterprise with respect to the number of employees, number and type of facilities, and size of budget;

(ii) The type of operation which the business, program or enterprise is engaged in, including the composition and structure of the workforce; and

(iii) The nature and cost of the accommodation needed.

*Id.*

As an outstanding healthcare institution, Defendant's main objective is to keep its patient population, including those who are immunocompromised, safe. (SUMF ¶¶ 2-6, 18-19.) Requiring Defendant to accommodate large swaths of its employees to forgo the flu vaccine undercuts it objective in having all healthcare employees vaccinated and would increase the risk of transmitting the flu to its patients. (*Id.* at ¶¶ 9-13, 18-19.) The flu vaccine is widely recognized as the most effective method to prevent transmission of the flu. (*Id.* at ¶ 12.) Even in years where the flu vaccine is less effective, the vaccine still prevents transmission because as the vaccination rate goes up, there is a lower likelihood of transmission; this is referred to as "herd immunity." (*Id.* at ¶¶ 12-13.) Although procedure masks are worn when a vaccine is not possible, it is not the most effective way to avoid transmission, and they are often misused, making them even less effective, which puts the safety of Defendant's patients and staff in the balance. (*Id.* at ¶¶ 14-15.) The analogous Americans with Disabilities Act specifically states that someone who presents "a direct threat to the health or safety of other individuals in the workplace" cannot even be qualified for a position (42 U.S.C.A. § 12113 (West)), so it stands to reason that an accommodation that would create a direct threat to the health and safety of others cannot be reasonable under the NYSHRL either.

The recent decision in *Robinson v. Children's Hospital of Boston* is factually analogous and instructive. No. 14–10263, 2016 WL 1337255 (D. Mass. Apr. 5, 2016). In *Robinson*, the plaintiff, an administrative associate in the emergency department who interacted with patients, alleged that the Children's Hospital of Boston terminated his employment in violation of Title VII and state law after he refused the flu vaccine due to his religious beliefs. The Children's Hospital maintained a policy requiring all employees with access to patient-care areas to receive the flu vaccine and allowed exemptions only for medical reasons. The plaintiff, a Muslim, objected to the vaccine because it contained pork byproduct and because he believed that vaccines are contaminated, yet declined a gelatin-free flu vaccine offered by the Children's Hospital. The court granted summary judgment to the Children's Hospital, concluding that any accommodation (such as the plaintiff's request to be relieved from vaccination while working in his patient-care position) would have been an undue hardship. Specifically, if the Children's Hospital had permitted him to forego the vaccine but keep his patient-care job, it could have put the health of vulnerable patients at risk, and permitting the employee to avoid vulnerable patients would have required the Children's Hospital to arrange its workflow around unpredictable factors.

Likewise, here, accommodating Plaintiff's request to be vaccine-free would have imposed an undue burden on not only Defendant but also on its patients and employees. First, it would increase the risk of transmitting the flu to a vulnerable patient population because, as a Vascular Technologist in the Radiology Department, Plaintiff interacted with various hospital patients and employees on a regular basis, including critically ill patients susceptible to the flu. (SUMF ¶¶ 5, 91.) As recognized in *Robinson*, "[h]ealthcare employees are at a high risk for influenza exposure and can be source of the fatal disease because of their job" and "the single most effective way to prevent the transmission of influenza is vaccination." 2016 WL 1337255, at *9. The potential cost of transmitting the flu infection to patients with vulnerable immune systems could

result in the loss of life, which is clearly an undue burden, and undermines Defendant's mission, which is to provide the most excellent patient care. Second, the potential for infection extends beyond patients to employees of Defendant. Allowing this risk also undermines Defendant's goal of creating the safest possible environment for its employees. Third, relocating Plaintiff to another building where she would be less likely to come into contact with hospital personnel who interacted with patients or allowing her to stay at home would have been unworkable options and would not have allowed her to discharge the essential functions of her job, which entailed seeing patients on a daily basis. (SUMF ¶ 91) *Craddock v. Little Flower Children & Family Servs. of New York*, No. 12-CV-5062, 2016 WL 755631, at *12 (E.D.N.Y. Feb. 25, 2016) (not reasonable accommodation where eliminating essential function of job, which is keeping residents safe); *see also Graves v. Finch Pruyne & Co.*, 457 F.3d 181, 186 n. 3 (2d Cir.2006) (disability discrimination claim under NYSHRL "survives or fails on the same basis as [the parallel] ADA claim).

Thus, even assuming Defendant was required to accommodate Plaintiff in the first instance, which it clearly was not, it would have been an undue hardship to do so, thereby warranting summary judgment on her state failure-to-accommodate claim for this additional reason.

## II. Summary Judgment Is Warranted on Plaintiff's Disparate Treatment Claims Because She Cannot Carry Her *Prima Facie* Burden or Prove Pretext.

Plaintiff fares no better with regard to her disparate treatment claims. She fails to meet her *prima facie* burden under federal and state law because she provides no evidence of any circumstances giving rise to an inference of discrimination. As described above, Plaintiff was subjected to the Policy in the exact manner as all employees, and she was terminated as a result of her failure to comply with the Policy. (SUMF ¶¶ 18, 159, 187-193.) She was warned several times in advance of her termination that if she failed to comply with the Policy, she would be terminated. (*Id.* at ¶¶ 97-98, 123, 127, 129, 148-49, 150, 153, 158.) Plaintiff has not pointed, and

cannot point, to any evidence that the denial of her exemption request was specifically tied to her pregnancy or that anyone involved in the decision to terminate her harbored any bias against pregnant individuals. She also cannot provide evidence that non-pregnant employees who failed to comply with the Policy remained employed because she admits she did not even speak to anyone else about their exemption request. (*Id.* at ¶ 194.) *See Peralta v. Roros 940, Inc.*, 72 F. Supp. 3d 385, 393 (E.D.N.Y. 2014) ("plaintiff terminated for misconduct can show pretext by demonstrating that 'similarly situated' coworkers outside the protected class engaged in comparable misconduct but were not terminated.") In fact, all employees, pregnant or not, who failed to comply with the Policy were terminated. (SUMF ¶ 187.) She also has produced not a shred of evidence proving that Defendant had any bias toward pregnant individuals, and she has not alleged any practice, statement, or comment other than her termination that was allegedly discriminatory towards pregnant workers. Even if Plaintiff could prove her *prima facie* case, which she cannot, she is unable to rebut the legitimate reason Defendant had for her termination – her failure to abide by the Policy – because, as highlighted above, she has offered absolutely no evidence of any bias towards pregnant individuals.

Summary judgment is therefore appropriate on her disparate treatment claims. *See Muhleisen*, 644 F. Supp. at 389–90 (S.D.N.Y. 2009) ("Plaintiff has presented no evidence that would lead a reasonable juror to conclude that her termination was motivated by gender or pregnancy discrimination, or that defendant's proffered reason for her termination was pretextual.").

## III.  Summary Judgment Is Warranted on Plaintiff's Disparate Impact Claims Because She Cannot Carry Her *Prima Facie* Burden.

With regard to her disparate impact claims, Plaintiff has proffered no statistical evidence that the Policy disproportionately affects pregnant employees, nor has she set forth any anecdotal evidence, or any other kind of evidence, that the Policy disproportionately affects pregnant

employees -- in fact, she specifically admits that she has not had any conversations with anyone regarding their exemption requests, so the basis for her allegation is highly questionable. (SUMF ¶ 194.) Indeed, the record does not reflect that pregnant employees were denied exemption requests more often than non-pregnant employees or that pregnant employees were terminated more often than non-pregnant employees as a result of their failure to comply with the Policy. (*Id.* at ¶¶ 187-193.)

Instead, as set forth in Section I(D)(2) *infra*, the Policy was applied to everyone equally, very few exemptions were granted in total to employees -- pregnant or not, and Defendant granted an exemption to at least one pregnant employee. (*Id.* at ¶¶ 18, 187-193) As such, there is no evidence of any kind of a disproportionate effect on pregnant women.  With nothing more than conclusory, unsupported statements in a Complaint, her disparate impact claims cannot succeed.  *See Capruso*, No. 01 CIV.4250, 2003 WL 1872653 at *6 (claim failed as matter of law when failed to provide comparison of protected class to other employees); *Legg*, 2017 WL 3207754 at *9 (claim failed where no evidence that policy affected pregnant women disproportionately).

Furthermore, even if pregnant employees were denied medical exemption requests more frequently than non-pregnant employees, which they were not, Plaintiff has provided not a shred of evidence to show that the reason for that was because of pregnancy. Instead, as made clear throughout this brief, in order to receive a medical exemption for employees -- pregnant or not -- employees had to prove that they had a medical contraindication as defined by the Policy, which was based upon the CDC's recommendations. (SUMF ¶¶ 42-43.) Whether or not someone was pregnant has no bearing on whether they also may be able to provide medical evidence that they have a medical contraindication. For instance, someone could be pregnant and also have an

allergy to one of the vaccine's components, and if they had provided evidence of such, an exemption would be granted. As such, Plaintiff would not be able to prove causation.

Even if Plaintiff had evidence of some disproportionate effect, which she does not, as discussed above, the vaccination requirement is a job-related requirement, consistent with Defendant's business needs – namely, keeping Defendant's patients and employees safe by preventing the spread of the flu, and Plaintiff is unable to put forth an alternative policy that would meet this business need without a disparate impact. (*Id.* at ¶¶ 2-6, 9-15, 18-19; *see also* Section I(E) *infra*.) As discussed, the flu vaccine is the most effective way to prevent the spread of the flu, and Defendant's main goal is to be on the cutting edge of medical innovations and keepings its patients safe. (*Id.*) Requiring the flu vaccine is the best way to do that, and permitting exemptions for non-medical or religious reasons undermines that goal. (*Id.*)

As such, no material facts are outstanding that would permit Plaintiff's disparate impact claims to be submitted to a jury.  They are completely unsupported.

## **CONCLUSION**

For the reasons set forth above, in Defendant's 56.1 Statement of Undisputed Material Facts, the Declarations of Amy J. Traub, Esq., Dr. Arnold S. Monto, M.D., Marlene Davis, and Derek Forte with attached exhibits, and all of the pleadings and proceedings had herein, the instant motion should be granted.

Dated: February 24, 2020            BAKER & HOSTETLER LLP
      New York, New York

                               /s/ *Amy J. Traub*
                               Amy J. Traub
                               Amanda L. Van Hoose Garofalo
                               45 Rockefeller Plaza, 14th Floor
                               New York, New York 10111
                               Tel: 212 589-4200
                               Fax: 212 589-4201
                               Email: atraub@bakerlaw.com
                               Email: agarofalo@bakerlaw.com

                               *Attorneys for Defendant NYU Winthrop Hospital*